NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELY LANIADO, *et al.*, | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 3:18-cv-1513-BRM-TJB |
| COUNTY OF OCEAN, *et. al*, | : | **OPINION** |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Brad Frank ("Officer Frank") and Ocean County Prosecutor's Office (collectively "Ocean County Defendants") Motion to Dismiss. (ECF No. 11.) Plaintiffs Estate of Michael Laniado, Ely Laniado, Sherry Laniado (collectively "Plaintiffs") oppose the Motion. (ECF No. 18.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Ocean County Defendants' Motion to Dismiss is **GRANTED**.

**I.     BACKGROUND**

For the purposes of the Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

This matter arises out of an incident that occurred on February 6, 2016, which led to Michael Laniado's death. (ECF No. 1 ¶¶ 24-25.) On February 6, at approximately 12:05 a.m., four officers from the Manchester Police Department went to Michael Laniado's residence at 257 Pine Acres Manor, Manchester, New Jersey to execute a $3300.00 child support warrant upon Michael Laniado's girlfriend. (*Id.* ¶ 37.) Upon their arrival, Michael Laniado was allegedly suffering from a psychiatric crisis. (*Id.* ¶ 46.) Therefore, the officers remained at the scene for approximately half an hour, at which point they requested back up from the Ocean County Regional S.W.A.T. Team. (*Id.* ¶ 44.) Several S.W.A.T. Officers arrived at the scene, including Officer Frank. (*Id.* ¶ 45.) "[T]hough suffering from a psychiatric crisis," Michael Laniado "attempted to comply with instructions of the police officers present." (*Id.* ¶ 46.) However, the situation "escalated to a full-blown standoff in the middle of the night," lasting about four hours and ending in Michael Laniado's death at approximately 3:51 a.m. (*Id.* ¶¶ 47, 51-52.) Michael Laniado was shot multiple times by several officers in front of his girlfriend. (*Id.* ¶ 52.)

The Manchester Police Department was familiar with Michael Laniado and his residence from prior interactions. (*Id.* ¶ 38.) Specifically, Manchester Police Officers were aware of his hostility toward law enforcement officers and that he suffered from a mental illness. (*Id.* ¶ 40.) Because of the Manchester Police Department's prior interactions with Michael Laniado, "Manchester Township had a 'flag' on [his] residence since August 2, 2014 advising that officers should use caution when responding to the house because [] Michael Laniado was very hostile and aggressive." (*Id.* ¶ 42.) As of July 9, 2015, there was also a warning that Michael Laniado "exhibited 'a definite dislike of [Manchester Police Department Officers.]" (*Id.*)

Manchester Police Officers have also transported Michael Laniado to Community Medical Center for evaluation and treatment due to his mental distress during prior encounters they had

with him. (*Id.* ¶ 41.) The Manchester Police Department has also contacted Ely Laniado, Michael Laniado's father, to assist in deescalating Michael Laniado's hostility toward law enforcement officers during prior incidents. (*Id.* ¶ 40.) In fact, the Manchester Police Department responded to the residence the night prior to February 6 due to a dispute between Michael Laniado and his neighbors and to conduct surveillance prior to executing the warrant on February 6. (*Id.* ¶ 39.)

Plaintiffs argue the February 6 situation and Michael Laniado's death "was unnecessarily escalated due to:" (1) "the defendants' actions, as defendants did not have proper training in dealing with suspects suffering from mental illnesses; (2) "defendants failed to contact any properly trained mental health counselors during the entire standoff"; (3) "defendants ignored the established police protocols to make attempts to deescalate the situation"; and (4) defendants did not contact Ely Laniado despite knowing he previously assisted the police in the past in deescalating matters with Michael Laniado. (*Id.* ¶¶ 48-51.) Plaintiffs filed a Complaint on February 2, 2018, alleging: (1) 42 U.S.C. §§ 1983 and 1985 violations; (2) negligence; (3) negligent hiring and training; (4) negligent supervision; (5) New Jersey Civil Rights Act ("NJCRA") violations; wrongful death; (6) assault and battery; and (7) civil conspiracy. (*See* ECF No. 1.) On April 30, 2018, the Ocean County Defendants filed a Motion to Dismiss the Complaint as to them. (ECF No. 11.) Plaintiffs oppose the Motion. (ECF No. 18.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts

3

of subject matter jurisdiction.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pa. Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999).

When evaluating a Rule 12(b)(1) motion to dismiss, a court must first determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject-matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion consists of a facial attack, the court "must accept the complaint's allegations as true," *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002), and "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d. at 891). However, if the motion involves a factual attack, "the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). Here, the Motion to Dismiss is a facial attack, because the Ocean Count Defendants assert they are immune from Plaintiffs' claims as pled. Therefore, on this question of immunity, the Court's review is limited to the allegations in the Complaint, which the Court must accept as true and view in the light most favorable to Plaintiffs.

4

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

## III. DECISION

### A. Eleventh Amendment Immunity

The Ocean County Defendants argue all claims against them are barred by Eleventh Amendment immunity. (ECF No. 11-1 at 6-10 and ECF No. 22 at 4.) Plaintiffs contend the Ocean County Defendants are not entitled to Eleventh Amendment immunity because the Ocean County Prosecutor's Office is not a state agency. (ECF No. 18 at 4-5.)

The Court begins its analysis with whether the Ocean County Prosecutor's Office is an arm of the State and therefore entitled to sovereign immunity afforded by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Eleventh Amendment immunity applies to agencies, departments, and officials of the State "even though the state is not named as a party to the action as long as the state is the real party in interest." *Carter*, 181 F.3d at 347 (quotation omitted). In *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989), the Third Circuit held that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting or to compel it to act." Therefore, sovereign immunity is appropriate if the named defendant is an "arm of the state." *Davis v. Lakewood*, No. 03–1025, 2005 WL 1863665, at *3 (D.N.J. Aug.4, 2005) (citation omitted). In *Fitchick*, the court also set forth a three-factor test to determine whether a defendant is indeed an "arm of the state" entitled to Eleventh Amendment immunity: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." 873 F.2d at 659. In applying this test, the court noted that not all three factors are given equal weight; instead, the first inquiry, whether payment of a judgment would come from the state, is the most important question, and generally proves dispositive. *Id.* at 659.

The Third Circuit and courts in this district have consistently held that county prosecutor's offices enjoy immunity from suit in federal court when acting in their law enforcement capacity. *Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009); *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009); *Kandil v. Yurkovic*, No. 06-4701, 2007 WL 4547365, *3 (D.N.J. Dec. 18, 2007); *Banda v. Burlington Cty.*, No. 03-2045, 2006 WL 2739718, *3 (D.N.J. Sept. 26, 2006). More specifically, this District has found, in an analogous case, the

Ocean County Prosecutor's Office to be an arm of the State entitled to Eleventh Amendment immunity. *Landi v. Borough of Seaside Park*, No. 07-5319, 2009 WL 606141, at *5 (D.N.J. Mar. 9, 2009).

In *Landi*, where a plaintiff alleged the Ocean County Prosecutor's Office failed to adequately train its investigators, this District found that "training of the prosecutor's office was a prosecutorial function rather than an administrative function because such training was imperative to the application of an overriding law enforcement policy meant to ensure effective and uniform enforcement of the criminal laws throughout the State." *Id.* at *4 (citations omitted); *see also In re Camden Police Cases*, No. 11-1315, 2011 WL 3651318, at *5 (finding "the training and supervision of the police officers qualifies as a prosecutorial function under *Wright* [*v. New Jersey*, 778 A.2d 443, 465 (N.J. 2001)]"); *Fletcher v. Camden Cty. Prosecutor's Office*, No. 385–09T1, 2010 WL 4226150, at *6–7 (N.J. Super. Ct. App. Div. Oct. 27, 2010) (affirming dismissal of claims against CCPO for failure to properly train, supervise or discipline its officers; adoption of official policy or custom that lead to constitutional violations; and implicit authorization or approval or acquiescence in unconstitutional conduct by its officers, because CCPO "is a law enforcement agency of the state").

Here, the Complaint also alleges the Ocean County Prosecutor's Office failed to properly train and supervise its officers. As to this claim, the Court finds the *Landi* case instructive. The Court initially looks at the first *Fitchik* factor, where the Court must consider "whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment and whether the sovereign has immunized itself from responsibility for the agency's debt." *Fitchik*, 873 F.2d at 659. "When considering whether a county prosecutor's office is entitled to sovereign immunity, a court must first determine in which capacity the prosecutor's office was acting when

the actions that gave rise to the plaintiff's claims took place." *Landi*, 2009 WL 606141, at *4. County prosecutors possess a hybrid status. *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996). "When county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Id.* However, when "the county prosecutor decide[s] whether an employee at his or her office is worthy of an open promotion, the county prosecutor is performing an administrative function on the local level entirely unrelated to the duties involved in criminal *prosecution*." *Id.* In fact, the State of New Jersey is required to defend and immunize county prosecutors for alleged "tortious conduct committed during the investigation, arrest, and prosecution of [a plaintiff]," unless the alleged misconduct involves fraud, actual malice, or willful misconduct. *Wright*, 778 A.2d at 465 (citing N.J. Stat. Ann. §§ 59:10A, 59:10–2).

The Court finds the Ocean County Prosecutor's supervision and training of its officers falls within the contours of prosecutorial tasks afforded protection under the Eleventh Amendment. "Clearly, the training [the Ocean County Prosecutor's Office] provided to investigators is imperative to the application of an overriding law enforcement policy meant to ensure effective and uniform enforcement of the criminal laws throughout the State." *Landi*, 2009 WL 606141, at *4 (quoting N.J. Stat. Ann. 52:17B–103); *see Kandil*, 2007 WL 4547365, at *1 (holding sovereign immunity applied to a county prosecutor's office, barring all of plaintiff's claims, including claims of negligent training and supervision). Moreover, the Attorney General is providing a defense to the Ocean County Prosecutor's Office and will indemnify it for all matters in this case, as is required by New Jersey law. *See Landi*, 2009 WL 606141, at *4. As such, any judgment awarded to Plaintiffs would be paid out of the state treasury. Accordingly, the first *Fitchik* factor is satisfied.

As to the second *Fitchik* factor, "the status of the entity under state law," "it is clear that under New Jersey law, [the Ocean County Prosecutor's Office] is a state entity when performing

its prosecutorial functions." *Landi*, 2009 WL 606141, at *5. The New Jersey Supreme Court has specified:

> When prosecutors perform their law enforcement function, they are discharging a State responsibility that the Legislature has delegated to the prosecutors . . . subject to the Attorney General's right to supersede. The legislative delegation, in combination with the Attorney's General supervisory authority and power to supersede, demonstrates that at its essence the county prosecutors' law enforcement function is clearly a State function.

*Wright*, 778 A.2d at 462. Lastly, the third *Fitchik* factor—"the entity's degree of autonomy"—is satisfied. *Fitchik*, 873 F.2d at 659. The Ocean County Prosecutor's Office, when acting in a prosecutorial capacity, "is not an autonomous entity." *Landi*, 2009 WL 606141, at *5.

> New Jersey law mandates that the Attorney General maintain a supervisory role over county prosecutors exercising and enforcing law enforcement policy. Moreover, the Attorney General is authorized to intervene and take over any investigation or prosecution initiated by county prosecutors.

*Id.* (citing N.J. Stat Ann. 52:17–106B). Because all the *Fitchik* factors are satisfied, the Ocean County Prosecutor's Office is entitled to Eleventh Amendment immunity and all claims against it are **DISMISSED**.

Because the Court has already determined the Ocean County Prosecutor's Office is immune, the same analysis applies to Officer Frank, and claims against Officer Frank in his official capacity as an Ocean County S.W.A.T. Officer are also dismissed. *Brown v. Twp. of Berlin Police Dep't,* No. 08-3464, 2008 WL 5100461, at *2 (D.N.J. Nov. 25, 2008) ("A suit against a state official in her official capacity is a suit against her office, and therefore amounts to a suit against the state itself."). Therefore, the Ocean County Defendants' Motion to Dismiss claims against the Ocean County Prosecutor's office is **GRANTED** and its Motion to Dismiss claims against Officer Frank in his official capacity is **GRANTED**.

### B. 42 U.S.C. §§ 1983, 1985 and the NJCRA

The Ocean County Defendants argue the Ocean County Prosecutor's Office and Officer Frank, in his official capacity, are not "persons" amendable to suit under § 1983. (ECF No. 11-1 at 11-12.) Plaintiffs disagree. (ECF No. 18 at 6.)

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Therefore, to state a claim under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under § 1983 and acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Commw. of Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). A State, or an official acting in his or her official capacity for the State, is not a person within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Because the Court has already determined the Ocean County Prosecutor's Office is an arm of the State and Officer Frank, in his official capacity, is an official acting in his capacity for the State, Plaintiffs' § 1983 claims against the Ocean County Prosecutor's Office and Officer Frank in his official capacity are **DISMISSED**.

The Complaint also seeks to hold the Ocean County Prosecutor's Office liable based upon the actions of its employees because of its failure to adequately train or supervise them. Those claims are also **DISMISSED**. "The Supreme Court enunciated the rule for imposing liability against a municipality [or local government] under section 1983 in *Monell v. Dep't of Social Servs.*

*of City of N.Y.*, 436 U.S. 658 (1978)." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Pursuant to 42 U.S.C. § 1983, governmental entities cannot be liable for the actions of its employees on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676. The Court in *Monell* held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. The Court explained, "local governments, like every other § 1983 '*person*,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." *Id.* at 691 (emphasis added). Because the Court has already established the Ocean County Prosecutor's Office is not a "person" pursuant to § 1983, it is not amendable to suit under *Monell* either.

Further, Plaintiffs allege the Ocean County Defendants violated § 1985. "Section 1985 contains the remedial provision for damages caused by a conspiracy to interfere with an individual's civil rights." *Cipolla v. Hayman*, No. 10-889, 2013 WL 1288166, at *6 (D.N.J. Mar. 26, 2013); *Haddle v. Garrison*, 525 U.S. 121, 125 n.2 (1998). The definition of "persons" under § 1983 has also been applied to claims arising under § 1985 by several lower courts. *See, e.g. Cipolla*, 2013 WL 1288166, at *6; *N.J. Sand Hill Band of Lenape & Cherokee Indians v. Corzine*, No. 09–683, 2010 WL 2674565, at *6 (D.N.J. June 30, 2010) (noting that "persons" in § 1983 and "persons" in § 1985 have the same meaning). As such, because the Court finds the Ocean County Defendants are not "person" under § 1983, they are also not person's pursuant to § 1985. Therefore, § 1985 claims against the Ocean Count Prosecutor's Office and Officer Frank in his official capacity are also **DISMISSED**.

Lastly, like § 1983, the NJCRA creates a cause of action against a "person acting under color of law." N.J. Stat. Ann. § 10:6-2. In this context, "person" likewise does not extend to the State itself or State agencies or officials in their official capacity. *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014) ("New Jersey district courts have interpreted the NJCRA as having incorporated the Supreme Court's decision in *Will* that, for purposes of § 1983, states and state officials acting in their official capacity are not amenable to suit."); *see also Didiano v. Balicki*, 488 F. App'x 634, 637-39 (3d Cir. 2012) (interpreting the definition of "person" in N.J.S.A § 1:1-2). Indeed, NJCRA was modeled after § 1983 and has been interpreted analogously. *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). "Therefore, the Court will analyze [Plaintiffs'] NJCRA claims through the lens of § 1983." *Id.* For the reasons expressed in connection with § 1983 analysis, the Ocean County Defendants' Motion to Dismiss Plaintiffs' NJCRA claims against the Ocean County Prosecutor's Office and Officer Frank is **GRANTED**. Accordingly, the Ocean County Defendants' Motion to Dismiss all claims against the Ocean County Prosecutor's Office is **GRANTED** and Motion to Dismiss all claims against Office Frank in his official capacity is **GRANTED**.

### C. Claims Against Officer Frank in his Individual Capacity

Plaintiffs' allege Officer Frank violated Michael Laniando's Fourth Amendment Constitutional rights by using excessive force in shooting him and causing his death. (ECF No. 1 ¶ 64; ECF No. 18 at 8.) Even though the Court dismissed Plaintiffs' claims against Officer Frank in his official capacity, it must address whether Officer Frank is entitled to qualified immunity in his individual capacity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. This doctrine provides a government official immunity from suit rather than a mere defense from liability. *Id.* Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

To determine whether Officer Frank is entitled to qualified immunity, the Court must undertake a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted).

As per the second requirement, "[b]ecause the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (citation omitted). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite

that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.*

In *Graham v. Connor*, 490 U.S. 386, 396 (1989), the Court held that the question whether an officer has used excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." It further noted, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397.

In *Kisela*, the Supreme Court held that an officer who shot a knife-wielding woman who moved "within a few feet" of another person and "failed to acknowledge at least two commands to drop the knife" did not violate clearly established law. 138 S. Ct. at 1153. Although the suspect "appeared calm" when the officer shot, she had been "hacking a tree" with the knife, and the officer "arrived on scene after hearing a radio report that a woman was engaging in erratic behavior." *Id.* at 1150-51. The officer claimed he shot the woman because he "believed she was a threat to" the other person standing within a few feet of her. *Id.* at 1153.

Here, the Complaint clearly establishes Michael Laniado posed "an immediate threat to the safety of the officers" and that he was noncompliant. Officer Frank was faced with a person who had been involved in prior incidents with law enforcement, who was noted to be "very hostile and aggressive" in dealings with law enforcement, who had a "dislike" for law enforcement officers,

whose home was flagged due to his noncompliance and dealings with law enforcement, and who was involved in an incident with a neighbor the day before the shooting. *Cordova v. Aragon*, 569 F.3d 1183, 1205 (10th Cir. 2009) (stating that "[p]ast behavior is the best predicator of future behavior"). Moreover, on the night of the incident the Manchester Police Officers remained at the scene for approximately half-hour, at which point they felt the need to request back up from the Ocean County Regional S.W.A.T. Team. (ECF No. 1 ¶ 44.) In addition, Plaintiffs admit Michael Laniado "*attempted* to comply with instructions of the police officers present" but nevertheless, the situation with Michael Laniado "escalated to a full-blown standoff," lasting about four hours. (*Id.* ¶¶ 46-47, 51-52.) Therefore, it is far from obvious that any competent officer would have know that shooting Michael Laniado to protect other officers could violate the Fourth Amendment. As such, Officer Frank is entitled to qualified immunity. Accordingly, the Ocean County Prosecutor's Motion to Dismiss all § 1983 claims against Officer Frank is **GRANTED**.

### D. Plaintiffs' State Claims

Plaintiffs' Complaint, in addition to claims brought pursuant to § 1983 and § 1985, alleges a variety of state law claims, including negligence, negligent hiring and training, negligent supervision, assault and battery, and civil conspiracy. (*See* ECF No. 1.) These claims are also barred by the Eleventh Amendment. The Eleventh Amendment provides that a court may not grant "relief against state officials on the basis of state law, whether prospective or retroactive." *Pennhurst*, 465 U.S. at 106. In *Pennhurst*, the Court clarified that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121. Accordingly, Plaintiffs' state claims against the Ocean County Prosecutor's Office and Officer Frank in his official capacity are **DISMISSED**.

**IV. CONCLUSION**

For the reasons set forth above, the Ocean County Defendants' Motion to Dismiss is **GRANTED** and all claims against the Ocean County Defendants are **DISMISSED**.


Date: November 26, 2018						*/s/ Brian R. Martinotti*
							**HON. BRIAN R. MARTINOTTI**
							**UNITED STATES DISTRICT JUDGE**