NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELY LANIADO, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 3:18-cv-1513-BRM-TJB |
| | : | |
| COUNTY OF OCEAN, *et. al*, | : | **OPINION** |
| | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Brad Frank's ("Officer Frank") Motion to Dismiss Plaintiffs Ely Laniado, Sherry Laniado, and the Estate of Michael Laniado's ("Plaintiffs") Amended Complaint pursuant to qualified immunity. (ECF No. 33.) Defendants Township of Berkeley, Jason Mroczka ("Officer Mroczka"), Township of Manchester, Thomas Chant ("Officer Chant"), Michael Steffen ("Officer Steffen"), Steven Wendruff ("Officer Wendruff"), Albert Vega ("Officer Vega"), and Charles S. Gatnarek ("Officer Gatnarek") join Officer Frank's Motion. (ECF Nos. 34, 36, and 37.)[1] Plaintiffs oppose the Motion. (ECF No. 41.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, Defendants' Motions to Dismiss are **GRANTED**.

---

[1] All defendants will collectively be referred to as "Defendants" and all officers will collectively be referred to as "Individual Defendants."

## I. BACKGROUND

For the purposes of the Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

The allegations in the Amended Complaint are essentially identical to that of the original Complaint. Therefore, the facts in this Opinion are relatively the same as those in the Court's prior Opinion. This matter arises out of an incident which led to Michael Laniado's death. (ECF No. 32 ¶¶ 19.) On February 6, 2016, at approximately 12:05 a.m., officers from the Manchester Police Department went to Michael Laniado's residence at 257 Pine Acres Manor, Manchester, New Jersey to execute a $3300.00 child support warrant upon Michael Laniado's girlfriend. (*Id.* ¶ 32.) The officers were defendants Chant, Steffen, Wendruff, Lynk, and Vega. (*Id.* ¶ 33.) Upon their arrival, Michael Laniado was allegedly suffering from a psychiatric crisis. (*Id.* ¶ 41.) Therefore, the officers remained at the scene for approximately half an hour, at which point Officer Wendruff requested back up from the Ocean County Regional S.W.A.T. Team. (*Id.* ¶ 39.) Several S.W.A.T. Officers arrived at the scene, including Officer Frank, Officer Gatnarek, and Officer Mroczka. (*Id.* ¶ 40.) "[T]hough suffering from a psychiatric crisis," Michael Laniado "attempted to duly comply with instructions of the police officers present." (*Id.* ¶ 46.) However, the situation "escalated to a full-blown standoff in the middle of the night," lasting about four hours and ending at 3:51 a.m. in Michael Laniado's death. (*Id.* ¶¶ 42, 46-47.) Michael Laniado was shot multiple times by several officers in front of his girlfriend. (*Id.* ¶ 52.) Officer Frank fired four shots, Officer Mroczka fired

"an unknown amount of shots," and Officer Gatnarek fired two rounds of "less lethal ammunition" at Michael Laniado. (*Id.* ¶¶ 48-50.)

The Manchester Police Department was familiar with Michael Laniado and his residence from prior interactions. (*Id.* ¶ 33.) Specifically, Manchester Police Officers were aware of his hostility toward law enforcement officers and that he suffered from a mental illness. (*Id.* ¶¶ 35-36.) Because of the Manchester Police Department's prior interactions with Michael Laniado, "Manchester Township had a 'flag' on [his] residence since August 2, 2014 advising that officers should use caution when responding to the house because [] Michael Laniado was very hostile and aggressive." (*Id.* ¶ 37.) There was also a "flag" on the residence because of a pitbull. (*Id.* ¶ 38.) As of July 9, 2015, there was also a warning that Michael Laniado "exhibited 'a definite dislike of [Manchester Police Department Officers.]" (*Id.*)

Manchester Police Officers also transported Michael Laniado to Community Medical Center for evaluation and treatment due to his mental distress during prior encounters they had with him. (*Id.* ¶ 36.) The Manchester Police Department also contacted Ely Laniado, Michael Laniado's father, to assist in deescalating Michael Laniado's hostility toward law enforcement officers during prior incidents. (*Id.* ¶ 35.) In fact, the Manchester Police Department responded to the residence on February 5, 2016, due to a dispute between Michael Laniado and his neighbors and to conduct surveillance before executing the warrant on February 6, 2016 (*Id.* ¶ 34.)

Plaintiffs argue the February 6, 2016 situation and Michael Laniado's death "was unnecessarily escalated" because: (1) "defendants did not have proper training in dealing with suspects suffering from mental illnesses;" (2) "defendants failed to contact any properly trained mental health counselors during the entire standoff"; (3) "defendants ignored the established police protocols to make attempts to deescalate the situation"; and (4) defendants did not contact Ely

Laniado despite knowing he previously assisted the police in the past in deescalating matters with Michael Laniado. (*Id.* ¶¶ 43-46.) Plaintiffs filed a Complaint on February 2, 2018, alleging: (1) 42 U.S.C. §§ 1983 and 1985 violations; (2) negligence; (3) negligent hiring and training; (4) negligent supervision; (5) New Jersey Civil Rights Act ("NJCRA") violations; (6) wrongful death; (7) assault and battery; and (8) civil conspiracy. (*See* ECF No. 1.) On April 30, 2018, the Officer Frank and the Ocean County Prosecutor's Office filed a Motion to Dismiss the Complaint as to them. (ECF No. 11.) The Court granted the Motion on November 26, 2018, finding they were entitled to immunity. (ECF Nos. 30-31.)

On December 10, 2018, Plaintiffs filed an Amended Complaint against the Township of Manchester; the Township of Berkeley; Officer Chant, in his official and individual capacity; Officer Steffen, in his official and individual capacity; Officer Wendruff, in his official and individual capacity; Officer Vega, in his official and individual capacity; Officer Frank, in his official capacity; Officer Gatnarek, in his official and individual capacity; and Officer Mroczka, in his official and individual capacity. (ECF No. 32.) The Amended Complaint contains the same causes of action alleged in the original Complaint. (*See id.*)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) mandates the dismissal of a case for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). An assertion of Eleventh Amendment immunity is a challenge to a district court's subject-matter jurisdiction. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Typically, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff

4

bears the burden of persuading the court that subject-matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). However, because "Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense," and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability. *Christy v. Pa. Turnpike Comm.*, 54 F.3d 1140, 1144 (3d Cir. 1994); *see also Carter v. City of Phila.*, 181 F.3d 339, 347 (3d Cir. 1999).

When evaluating a Rule 12(b)(1) motion to dismiss, a court must first determine whether the motion attacks the complaint as deficient on its face, or whether the motion attacks the existence of subject-matter jurisdiction in fact, apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the motion consists of a facial attack, the court "must accept the complaint's allegations as true," *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002), and "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d. at 891). However, if the motion involves a factual attack, "the court may consider evidence outside the pleadings." *Gould*, 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)). Here, the Motion to Dismiss is a facial attack, because the Ocean Count Defendants assert they are immune from Plaintiffs' claims as pled. Therefore, on this question of immunity, the Court's review is limited to the allegations in the Complaint, which the Court must accept as true and view in the light most favorable to Plaintiffs.

**B. Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

## III. DECISION

### A. Qualified Immunity as to the Individual Defendants

The Individual Defendants argue that they are entitled to qualified immunity from Plaintiffs' section 1983 and 1985 claims. (ECF Nos. 33-1, 34, 36, 37.) Plaintiffs contend they are not entitled to qualified immunity because "it is in question whether [Michael Laniado] posed a safety risk to anyone at the time of the shooting." (ECF No. 41 at 6.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. This doctrine

provides a government official immunity from suit rather than a mere defense from liability. *Id.* Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

To determine whether the Individual Defendants are entitled to qualified immunity, the Court must undertake a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted).

Regarding the second requirement, "[b]ecause the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (citation omitted). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.*

The Court must first examine whether Plaintiffs have stated a claim for a constitutional violation. Plaintiffs set forth a claim against all Defendants under section 1983 and 1985. Specifically, they allege Defendants:

> acted with deliberate and conscious indifference to Michael Laniado's constitutional rights which violations arose out of a

8

> pattern or custom or policy and practice by each of the defendants, in allowing, permitting and condoning the violation of procedures and protocol, and the use of excessive force, maintaining inadequate policies and protocols for the use of force and the handling of mentally ill suspects, failing to intervene, failing to render medical aid, as well as the failure to properly hire, train and supervise individual and unidentified defendants in the proper conduct of their duties, among other acts and omissions.

(ECF No. 32 ¶ 63.)

Next, the Court must determine whether the constitutional right at issue was clearly established. In its prior decision, the Court analyzed whether qualified immunity barred the claims against Officer Frank and concluded, under the facts alleged in the Original Complaint, qualified immunity applied. The allegations in the Amended Complaint as to Officer Frank are essentially identical to that of the original Complaint. Moreover, the allegations against Officer Frank are the same allegations against the rest of the Individual Defendants. Therefore, the same analysis the Court applied in the prior decision applies here as well.

In *Graham v. Connor*, 490 U.S. 386, 396 (1989), the Court held that the question of whether an officer has used excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." It further noted, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397.

In *Kisela*, the Supreme Court held that an officer who shot a knife-wielding woman who moved "within a few feet" of another person and "failed to acknowledge at least two commands to drop the knife" did not violate clearly established law. 138 S. Ct. at 1153. Although the suspect "appeared calm" when the officer shot, she had been "hacking a tree" with the knife, and the officer "arrived on scene after hearing a radio report that a woman was engaging in erratic behavior." *Id.* at 1150-51. The officer claimed he shot the woman because he "believed she was a threat to" the other person standing within a few feet of her. *Id.* at 1153.

Because the allegations in the Amended Complaint are essentially identical to that of the original Complaint, the Court maintains its finding that the constitutional right at issue did not violate clearly established. For reasonable officials to be on notice that their conduct would be unlawful, there must be "some but not precise factual correspondence between relevant precedents and the conduct at issue." *Larsen v. Senate of Com. of Pa.*, 154 F.3d 82, 87 (3d Cir. 1998) (citations omitted). Plaintiffs have not cited to any relevant precedents concluding that the constitutional rights at issue, here, violated clearly established law. The Court continues to find *Kisela* persuasive and instructive.

Here, the Amended Complaint clearly establishes Michael Laniado posed "an immediate threat to the safety of the officers" and that he was noncompliant. *Graham*, 490 U.S. at 396. The Individual Defendants were faced with a person who had been involved in prior incidents with law enforcement, who was noted to be "very hostile and aggressive" in dealings with law enforcement, who had a "dislike" for law enforcement officers, whose home was flagged due to his noncompliance and dealings with law enforcement, and who was involved in an incident with a neighbor the day before the shooting. *Cordova v. Aragon*, 569 F.3d 1183, 1205 (10th Cir. 2009) (stating that "[p]ast behavior is the best predicator of future behavior"). Moreover, on the night of

the incident the Manchester Police Officers remained at the scene for approximately half-hour, at which point they felt the need to request back up from the Ocean County Regional S.W.A.T. Team. (ECF No. 32 ¶ 39.) In addition, Plaintiffs admit Michael Laniado "*attempted* to comply with instructions of the police officers present" but nevertheless, the situation with Michael Laniado "escalated to a full-blown standoff," lasting about four hours. (*Id.* ¶¶ 46.) Therefore, it is not obvious that any competent officer would have known that shooting Michael Laniado to protect other officers could violate the Fourth Amendment, especially considering the lack of precedent. As such, the Individual Defendants are entitled to qualified immunity from the 1983 and 1985 claims.[2] Accordingly, Defendants' motions to dismiss as to the Individual Defendants are **GRANTED**.[3]

### B. Liability of Township of Manchester and Township of Berkeley

Plaintiffs claim that the Township of Manchester and Township of Berkeley are liable under sections 1983 and 1985 for the constitutional violations committed by its officers by instituting policies, procedures, and customs that caused Michael Laniado's constitutional injuries and for negligently hiring and failing to adequately train its officers. (*See* ECF No. 32.)

---

[2] "Section 1985 contains the remedial provision for damages caused by a conspiracy to interfere with an individual's civil rights." *Cipolla v. Hayman*, No. 10-889, 2013 WL 1288166, at *6 (D.N.J. Mar. 26, 2013); *Haddle v. Garrison*, 525 U.S. 121, 125 n.2 (1998). "If an official is immune from suit under § 1983, that official also is immunized from suit under § 1985(3)." *Downey v. Coal. Against Rape & Abuse, Inc.*, 143 F. Supp. 2d 423, 453 (D.N.J. 2001).

[3] Plaintiffs' Amended Complaint, in addition to claims brought pursuant to § 1983 and § 1985, alleges a variety of state law claims, including NJRCA, negligence, negligent hiring and training, negligent supervision, assault and battery, and civil conspiracy. (*See* ECF No. 32.) The Court declines to exercise supplemental jurisdiction over these claims. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Accordingly, all claims against the Individual Defendants are **DISMISSED**.

"The Supreme Court enunciated the rule for imposing liability against a municipality [or local government] under section 1983 in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)." *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Pursuant to 42 U.S.C. § 1983, governmental entities cannot be liable for the actions of its employees on a *respondeat superior* theory. *Iqbal*, 556 U.S. at 676. The Court in *Monell* held:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

There are three scenarios where the acts of a government employee may be characterized to be the result of a policy or custom of a government entity:

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (citation omitted).

A policy or custom can be established in two ways. "Policy is made when a decision [] maker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d

582, 595 (D.N.J. 2013) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (citation omitted)). "A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well settled as to virtually constitute law." *Id.* (quoting *Andrews*, 895 F.2d at 1480 (citation omitted)). Custom can also be established through evidence of "knowledge and acquiescence." *Id.*

"[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citation omitted). However, a failure to train claim can only serve as the basis for a § 1983 liability when "the failure to train amounts to deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *Id.* (citation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* (citation omitted).

Establishing a failure to train claim under § 1983 is difficult. *Id.*; *City of Canton*, 489 U.S. at 387 (concluding there are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983"). "A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)). A "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Specifically, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability

13

and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

As such, to establish whether a municipality's alleged failure to train amounted to a deliberate or conscious choice, a plaintiff must demonstrate that: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A patter of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).

Here, Plaintiffs fail to allege the existence of any preexisting policy, custom, or practice, that could form the basis of a municipal liability claim. The Amended Complaint conclusory states:

> 65. The defendants Township of Manchester, Township of Berkeley, and ABC Entities 1-5, their agents, servants and/or employees allowed, condoned and permitted an improper and poorly handled attempt to execute an arrest warrant, with deliberate indifference failed to prevent it, failed to intervene, failed to render medical aid, failed to supervise, failed to monitor, failed to properly hire, train and supervise, misused their power, condoned and ratified the use of excessive and unnecessary force and subjected Michael Laniado to improper search and seizure, among other violations of the Fourth and Fourteenth Amendments of the United States Constitution.
> . . . .
>
> 69. The defendants Township of Manchester, Township of Berkeley, and ABC Entities 1-5 acted pursuant to official or unofficial policy and/or custom and to deprive [Michael Laniado] of his constitutional rights.

(ECF No. 32 ¶¶ 65, 69.) These allegations are completely conclusory and, at best, merely recite the elements necessary to establish a *Monell* claim. The Amended Complaint is devoid of any facts demonstrating a policy or facts supporting that excessive force was so pervasive and well settled as to constitute a custom under *Monell* in the Township of Manchester and Township of Berkeley.

Plaintiffs fail to allege any facts to support a finding that these townships failed to train, supervise, penalize, or correct any officer's behavior. Again, the allegations above reflect nothing more than a conclusory recitation of the elements of a failure to train or supervise claim. There are no facts supporting the failure to provide any specific training or a deliberate indifference to the rights of Plaintiffs or anyone. As such, the Township of Manchester and Township of Berkeley are entitled to qualified immunity from the 1983 and 1985 claims.[4] Accordingly, Defendants' Motions to Dismiss are **GRANTED**.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' motions to Dismiss are **GRANTED** (ECF Nos. 33-1, 34, 36, 37) and the matter is **CLOSED**. Plaintiffs may file their last amended Complaint by August 21, 2019.

Date: July 31, 2019    */s/ Brian R. Martinotti*
    **HON. BRIAN R. MARTINOTTI**
    **UNITED STATES DISTRICT JUDGE**

---

[4] Because the townships are immune from suit under § 1983, they are also immunized from suit under § 1985(3). *Downey*, 143 F. Supp. 2d at 453. In addition to claims brought pursuant to § 1983 and § 1985, alleges a variety of state law claims, including NJRCA, negligence, negligent hiring and training, negligent supervision, assault and battery, and civil conspiracy against the Township of Manchester and Township of Berkeley. (*See* ECF No. 32.) The Court also declines to exercise supplemental jurisdiction over these claims. Accordingly, all claims against the Individual Defendants are **DISMISSED**.